IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

MATTHEW ROBERT PUSATERI;
DALTON ROBERT PUSATERI,

        Plaintiffs,

v.

KLAMATH COUNTY SHERIFFS OFFICE;
RYAN HUNTSMAN; MARK BORGES;
WEBBER; ELLIS,

        Defendants.

Civ. No. 1:18-cv-00060-AA

**OPINION & ORDER**

AIKEN, District Judge.

Plaintiffs Matthew Robert Pusateri and Dalton Robert Pusateri seek leave to proceed *in forma pauperis* (IFP) in this civil rights action against the Klamath County Sheriff's Office (KCSO) and a number of individual deputy sheriffs employed by KCSO. For the reasons set forth below, the Pusateris' Complaint, ECF No. 1, is DISMISSED with leave to amend. The Court defers ruling on the Pusateris' Application for Leave to Proceed IFP, ECF No. 2, pending submission of an amended complaint.

## BACKGROUND

The Pusateris' Complaint is disjointed and difficult to read. It largely consists of a disconnected recitation of incidents and grievances, apparently involving an unnamed home owner's association (HOA), as well as conflicts between the Pusateris and various private

Page 1 –OPINION & ORDER

individuals and Klamath County employees. The following summary is derived from the Complaint:

## I. First Claim

In the first claim, the Pusateris allege that KCSO Deputy Ryan Huntsman responded to a report of assault on August 29, 2012. The details of the alleged assault are not included, nor are details of Deputy Huntsman's investigation, other than that he interviewed both parties. At some point after this, someone, presumably the Pusateris, discovered that an HOA president named Mark Thompson was involved in a theft. On September 12, 2012, someone named Matt Langsford and his girlfriend Jasmin were held hostage by three armed men, allegedly in retaliation for the events of August 29, 2012. The Complaint offers no details about any of these individuals or events, nor does it explain how they are related.

## II. Second Claim

The Pusateri's second claim appears to involve two separate incidents. The first, which took place on April 30, 2013, involves an altercation between "KFFE HOA Treasurer Linda Rossiter" and an unnamed HOA member in which Rossiter is alleged to have been on the unnamed HOA member's property while armed with a rifle. Rossiter was arrested by KCSO Deputy Mark Borges, although the Pusateris "don't think she faced charges."

The second incident occurred on July 7-8, 2013. On July 7, 2013, the Pusateris allege that KCSO received a call from an individual named Bill Beaumont, in which Beaumont threatened to kill Matthew Pusateri if KCSO did not respond. In the early hours of July 8, 2013, KCSO deputies responded to reports of gunshots, apparently fired by Beaumont. There are no details about this incident, other than that the Pusateris were unsatisfied with the KCSO deputies'

investigation. The Pusateris allege that two days after the incident, Beaumont "fired three shots in a tan truck." No other details are alleged.

### III. Third Claim

The Pusateris' third claim alleges that Matthew Pusateri drove to KCSO headquarters on October 10, 2013, to report misconduct and financial irregularities. Who precisely committed these offenses is unclear, although the Court infers that it involved the Pusateris' HOA. KCSO deputies told the Pusateris that it was a civil matter and declined to investigate.

### IV. Fourth Claim

The Pusateris' fourth claim alleges that an individual named Steven Edward Dann (or Danne) was murdered on May 10, 2014. The Pusateris claim that Dann was murdered with the same guns, and presumably the same individuals, who were involved in the July 8, 2013 incident. The Pusateris reported their suspicions to the authorities in Klamath County, who declined to investigate.

### V. Fifth Claim

The Pusateris' fifth claim alleges that in January 2016, employees of the "KFFE Special Road District" blocked Matthew Pusateris' driveway either by failing to plow snow from the road in front of Matthew Pusateris' house, or by plowing it in such a way that the snow accumulated in the private driveways. Matthew Pusateri and his roommate complained about the situation to KCSO deputy Mark Borges, but were told nothing could be done.

### VI. Sixth Claim

The Pusateris' sixth claim contains the allegation: "Report on 10-25-2016 of Earl Perry of KCCE trespassing and making threats, causing stress, uncertainty." The Court infers that "KCCE" is Klamath County Code Enforcement. No further details are included.

The claim goes on to allege that on October 26, 2017, Matthew Pusateri went to KCSO "to report theft, imbezlement [sic], conspiring, colussion [sic], accessories before and after the fact." The Complaint does not clearly allege who did what, when, and to whom, other than a cryptic reference to "the chairman." KCSO deputies declined to investigate, telling the Pusateris that it was a civil matter.

### VII. Seventh Claim

The Pusateris' final claim alleges that someone named Eric Gorgiz reported money missing from the HOA on November 16, 2017. KCSO indicated that it would investigate after the Thanksgiving holiday, but Gorgiz did not produce the documents to support his allegations.

## LEGAL STANDARD

Generally, all parties instituting any civil action in United States District Court must pay a statutory filing fee. 28 U.S.C. § 1914(a). However, the federal IFP statute, 28 U.S.C. § 1915(a)(1), provides indigent litigants an opportunity for meaningful access to federal courts despite their inability to pay the costs and fees associated with that access. To authorize a litigant to proceed IFP, a court must make two determinations. First, a court must determine whether the litigant is unable to pay the costs of commencing the action. 28 U.S.C. § 1915(a)(1). Second, it must assess whether the action is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2)(B).

In regard to the second of these determinations, district courts have the power under 28 U.S.C. § 1915(e)(2)(B) to screen complaints even before service of the complaint on the defendants, and must dismiss a complaint if it fails to state a claim. Courts apply the same standard under 28 U.S.C. § 1915(e)(2)(B) as when addressing a motion to dismiss under Federal

Rule of Civil Procedure 12(b)(6). *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Id.*

*Pro se* pleadings are held to less stringent standards than pleadings by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). That is, the court should construe pleadings by *pro se* plaintiffs liberally and afford the plaintiffs the benefit of any doubt. *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). Additionally, a *pro se* litigant is entitled to notice of the deficiencies in the complaint and the opportunity to amend, unless the complaint's deficiencies cannot be cured by amendment. *Id.*

## DISCUSSION

The Complaint in this case is disjointed and difficult to read. Construed liberally, it appears that the Pusateris intend to assert 42 U.S.C. § 1983 civil rights claims against KCSO and various individual deputies for failure to initiate criminal investigations and/or prosecutions in response to reports made by Matthew Pusateri. Dalton Pusateri's involvement in these claims is unclear.

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286,

290 (1999). To maintain a claim under § 1983, "a plaintiff must both (1) allege the deprivation of a right secured by the federal Constitution or statutory law, and (2) allege that the deprivation was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

## I.  Standing

Even at this early stage of the case, the Court notes several serious issues with the Pusateris' Complaint. The most important is standing. "[S]tanding is an essential and unchanging part of the case-or-controversy requirement of Article III [of the United States Constitution]." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). At an "irreducible constitutional minimum," Article III standing "requires the party asserting the existence of federal court jurisdiction to establish three elements: (1) an injury in fact that is (a) concrete and particularize and (b) actual or imminent; (2) causation; and (3) a likelihood that a favorable decision will redress the injury." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010) (internal quotation marks and citation omitted).

In addition to these constitutional limitations on federal court jurisdiction, there are also prudential limitations on its exercise. *Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1103-04 (9th Cir. 2006). The doctrine of prudential standing "restrict[s] the grounds a plaintiff may put forward in seeking to vindicate his personal stake." *Id.* at 1104. Courts must consider, among other things, "whether the alleged injury is more than a mere generalized grievance, whether the plaintiff is asserting her own rights or the rights of third parties, and whether the claim in question falls within the zone of interests to be protected or regulated by the

constitutional guarantee in question." *Wolfson*, 616 F.3d at 1056 (internal quotation marks and citation omitted). "As a prudential matter, even when a plaintiff has Article III standing, we ordinarily do not allow third parties to litigate on the basis of the rights of others." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 917 (9th Cir. 2004).

The substance of the Pusateris' claims, at least so far as the Court can understand them, is that KCSO and the named deputies failed to undertake or maintain criminal investigations and prosecutions against individuals and organizations that the Pusateris believed were engaged in criminal wrongdoing. The Pusateris lack standing to maintain such a claim: "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Tia v. Criminal Investigation Demanded as Set Forth*, 441 F. App'x 457, 458 (9th Cir. 2011) (holding that a private citizen plaintiff "lacks standing to compel an investigation or prosecution of another person."); *Graves-Bey v. City and Cnty. of San Francisco*, 669 F. App'x 373, 374 (9th Cir. 2016) (holding same). Accordingly, the Pusateris' claims are DISMISSED for lack of standing.

## II. Statute of Limitations

Any claim under § 1983 is subject to a statute of limitations. Because § 1983 does not have an express statute of limitations, federal courts borrow the state statute of limitations for personal injury actions. *Owens v. Okure*, 488 U.S. 235, 240 (1989). Oregon's two-year statute of limitations for personal injury actions, ORS 12.110(1), applies to the Pusateris' § 1983 claims. *Cooper v. City of Ashland*, 871 F.2d 104, 105 (9th Cir. 1989).

In this case, the Complaint was filed on January 10, 2018. Any claims that accrued prior to January 10, 2016, are therefore barred by the statute of limitations. That would appear to include the Pusateris' first, second, third, and fourth claims for relief.

### III. OTCA

To the extent that the Pusateris intended to bring state law tort claims against KCSO, they must comply with the requirements of the Oregon Tort Claims Act (OTCA), ORS 30.260-300. "The Oregon Tort Claims Act provides an exclusive remedy for pursuing a tort claim against a public body." *Plumeau v. Sch. Dist. No. 40 Cnty of Yamhill*, 130 F.3d 432, 436 (9th Cir. 1997). The notice period for the OTCA "beings to run when the plaintiff knows, in the exercise of reasonable care should have known, facts which would make a reasonable person aware of a substantial possibility that a tort action exists." *Id.* (internal quotation marks and citation omitted). The OTCA requires that plaintiffs give notice of their claims to the public body in question, usually within 180 days after the alleged loss or injury. ORS 30.275(2)(b). The burden is on the plaintiff to show that the notice was timely. ORS 30.275(7). In this case, the Pusateris do not mention any notice given to the KCSO and the Court notes that many of the incidents referenced in the Complaint appear to have occurred more than 180 days before the filing of the Complaint.

### IV. Leave to Amend

Finally, and most fundamentally, the Court is unable to discern the basis of the Pusateris' claims, other than in the most general terms. Federal Rule of Civil Procedure 8 provides that a civil complaint should include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In this case, the Complaint presents its information chronologically, but without the details and context necessary for the Court to understand either the Pusateris' claims or the facts underlying those claims. The Court is left to guess and infer who has done what, when, and to whom and what any of those facts have to do with the Pusateris' claims.

The Court is mindful of the latitude given to *pro se* litigants, however, and the Pusateris will be given leave to file an amended complaint. In drafting their amended complaint, the Pusateris should endeavor to correct the deficiencies identified in this Order. The Pusateris should also take care to include sufficient factual detail to allow the Court to better understand the nature of the Pusateris' claims, although not so much detail that the amended complaint is not "short and plain," as required by Rule 8.

## CONCLUSION

For the reasons set forth above, the Complaint, ECF No. 1, is DISMISSED with leave to amend. Plaintiffs shall have thirty (30) days from the date of this Order in which to file an amended complaint. Plaintiffs are advised that failure to file an amended complaint within the allotted time will result in the entry of a judgment of dismissal. The Court defers ruling on Plaintiffs' IFP petition pending the filing of the amended complaint.

It is so ORDERED and DATED this 12th day of January, 2018.

ANN AIKEN
United States District Judge